# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN BLUM, Individually and on behalf of All Others Similarly Situated, | Case No.: 1:24-cv-01910 |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| ANAVEX LIFE SCIENCES CORPORATION and CHRISTOPHER U. MISSLING, | |
| Defendants. | |
| KENNETH DOWNING, Individually and on behalf of All Others Similarly Situated, Plaintiff, | Case No.: 1:24-cv-03529 |
| v. | <u>CLASS ACTION</u> |
| ANAVEX LIFE SCIENCES CORPORATION and CHRISTOPHER U. MISSLING, | |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF KENNETH DOWNING FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN <u>OPPOSITION TO COMPETING LEAD PLAINTIFF MOTION</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ......................................................................................................................... 5

I.     Consolidation of the Related Actions is Appropriate, and the Failure to
Consolidate Will Result in the Needless Waste of Resources ............................................ 5

II.    The Broader Period of Alleged Fraud Pled in the *Downing* Complaint Should be the
Operative Class Period, as it is Neither "Implausible" Nor "Obviously Frivolous" .......... 7

III.   Movant Downing Should Be Appointed Lead Plaintiff .................................................. 12

     A.     Downing Has the Largest Financial Interest ........................................................ 12

     B.     Downing Satisfies the Requirements of Rule 23 ................................................. 13

            1.     Downing Is Typical .................................................................................. 14

            2.     Downing Is Adequate ............................................................................... 14

IV.   Movant Downing's Selection of Counsel Should Be Approved ..................................... 15

# TABLE OF AUTHORITIES

Cases                                                                                                                    Page(s)

*Atanasio v. Tenaris S.A.*,
    331 F.R.D. .................................................................................................................................... 13

*Bevinal v. Avon Prod., Inc.*,
    No. 19-cv-1420(CM), 2019 WL 2497739 (S.D.N.Y. June 3, 2019).......................................... 2

*Bo Young Cha v. Kinross Gold Corp.*,
    No. 12-cv-1203 (PAE), 2012 WL 2025850 (S.D.N.Y. May 31, 2012) .................................... 2

*Carlyle Aviation Mgmt. v. Frontier Airlines, Inc.*,
    No. 23-cv-4774 (PAE), 2024 WL 168079 (S.D.N.Y. Jan. 16, 2024) ....................................... 6

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*,
    No. 18-cv-3608 (VSB), 2019 WL 364570 (S.D.N.Y. Jan. 30, 2019) ..................................... 13

*Faig v. Bioscrip, Inc.*,
    No. 13-cv-06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ................................. 14

*Glavan v. Revolution Lighting Techs., Inc.*,
    No. 19-cv-980 (JPO), 2019 WL 3406582 (S.D.N.Y. July 29, 2019)........................................ 13

*Hom v. Vale, S.A.*,
    No. 15-CV-9539 (GHW), 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ................................... 10

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010) ...................................................................................... 8

*In re Centerline Holding Co. Sec. Litig.*,
    No. 08-cv-1026(SAS), 2008 WL 1959799 (S.D.N.Y. May 5, 2008) ....................................... 8

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F. Supp. 2d 398 (S.D.N.Y. 2006) ...................................................................................... 7

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) .................................................................................................... 14

*In re Elan Corp. Sec. Litig.*,
    No. 08-cv-8761 (AKH), 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ................................... 4

*In re Initial Pub. Offering Sec. Litig.*,
    214 F.R.D. 117 (S.D.N.Y. 2002)............................................................................................. 14

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 112 (S.D.N.Y. 2010)............................................................................................... 7

ii

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir.1990) ............................................................................. 5

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ....................................................................... 6, 7

*Kemp v. Universal Am. Fin. Corp.*,
  Case No. 05-CV-9883-JFK, 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ............ 12

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015) ................................................................ 5

*Kux-Kardos v. VimpelCom, Ltd.*,
  151 F. Supp. 3d 471 (S.D.N.Y. 2016) ................................................................ 5

*Lucas v. United States Oil Fund, LP*,
  No. 20-cv-4740 (PGG), 2020 WL 5549719 (S.D.N.Y. Sept. 16, 2020) ................ 8

*May v. Barclays PLC*,
  No. 23-cv-2583 (LJL), 2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023) .................. 13

*McCormack v. Dingdong (Cayman) Ltd.*,
  No. 22-CV-7273 (VSB), 2023 WL 3750162 (S.D.N.Y. June 1, 2023) .................. 10

*Micholle v. Ophthotech Corp.*,
  Case No. 17-cv-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ............ 3

*Moshell v. Sasol Limited*,
  No. 20-cv-1008 (JR), 2020 WL 2115410 (S.D.N.Y. Feb. 5, 2020) ...................... 15

*Omdahl v. Farfetch Ltd.*,
  No. 19-cv-8657(AJN), 2020 WL 3072291 (S.D.N.Y. June 10, 2020) .................... 6

*Plaut v. The Goldman Sachs Grp., Inc.*,
  No. 18-cv-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ................ 14

*Ragan v. AppHarvest, Inc.*,
  No. 21-cv-7985 (LJL), 2021 WL 5909116 (S.D.N.Y. Dec. 13, 2021) .................... 3

*Rauch v. Vale S.A.*,
  378 F. Supp. 3d 198 ........................................................................................... 7

*Salinger v. Sarepta Therapeutics, Inc.*,
  No. 19-cv-8122 (VSB), 2019 WL 6873807 (S.D.N.Y. Dec. 17, 2019) .................. 14

*Turner v. ShengdaTech, Inc.*,
  No. 11-1918 (TPG), 2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) ........................ 10

*Villella v. Chem. & Mining Co. of Chile Inc.*,

No. 15-cv-2106 (ER), 2015 WL 6029950 (S.D.N.Y. Oct. 14, 2015) ........................................ 7

Statutes

15 U.S.C. § 78u–4(a)(3)(A)(ii) ................................................................................. 10
15 U.S.C. § 78u-4(a)(3)(B) .................................................................................... 13
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................................................... 12
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ..................................................................... 13
15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...................................................................... 3, 13
15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) .................................................................... 15
15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................ 15

Rules

Fed. R. Civ. P. 42 ......................................................................................... 3, 5, 6, 7
Fed. R. Civ. P. 42(a) ............................................................................................ 5

iv

Proposed Lead Plaintiff Kenneth Downing ("Downing" or "Movant") respectfully submits this Memorandum of Law in Further Support of Downing's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, and in Opposition to Competing Lead Plaintiff Motion, and states as follows.

## PRELIMINARY STATEMENT[1]

On March 13, 2024, Jonathan Blum initiated the above-captioned class action against Anavex Life Sciences Corporation ("Anavex") and its senior executives, alleging a class period of February 1, 2022 through January 1, 2024 ("*Blum*"). On May 8, 2024, Downing initiated the above-captioned related class action against the same Defendants, alleging an expanded Class Period of June 21, 2021 through January 1, 2024 ("*Downing*"; together with *Blum*, the "Related Actions"). For the reasons discussed herein, the broader class period alleged in *Downing* is the operative period for purposes of the instant motions for appointment of lead plaintiff.

On May 13, 2024, Movant Downing timely filed his Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel (ECF No. 17) ("Downing Motion"). Also on that date, Quintess Huey ("Huey" or "Competing Movant") moved for appointment as lead plaintiff and approval of selection of counsel (ECF No. 13) ("Huey Motion"). Competing Movant Huey does not, however, seek consolidation of the Related Actions, and instead argues, without citation to any relevant authority, that the Related Actions – despite alleging the same claims against the same defendants stemming from the same conduct during substantially overlapping class periods – should proceed separately. *See* ECF No. 14 at 3,

---

[1] Unless otherwise indicated, all references to "ECF No. __" are to docket entries in the first-filed *Blum* action, and all capitalized terms are defined in Downing's Motion and accompanying Memorandum of Law, *see* ECF Nos. 17 & 18.

n. 2.[2] The Huey Motion should be denied; the Downing Motion should be granted, Downing should be appointed Lead Plaintiff, and the *Blum* and *Downing* actions should be consolidated.

**First**, Downing suffered the largest loss in his transactions in Anavex in the operative Class Period under the preferred LIFO methodology,[3] as the following chart illustrates:

| Movant | Losses (LIFO) |
|---|---|
| **Downing** | **$216,243.88** |
| Huey | $123,030.15 |

Downing thus possesses the "largest financial interest" in this litigation – nearly *double* the loss claimed by Huey – and is presumptively the "most adequate plaintiff" under the PSLRA. *See Bevinal v. Avon Prod., Inc.*, No. 19-cv-1420(CM), 2019 WL 2497739, at *1 (S.D.N.Y. June 3, 2019) (the PSLRA "establishes a rebuttable presumption that 'the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that:' (1) has either filed the complaint or made a motion in response to the publication of notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.") (McMahon, J.). Huey incorrectly implies that her losses are larger; they are not because Huey's losses are calculated based on the class period in the *Blum*

---

[2] Competing Movant filed her Opposition to Competing Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel on May 28, 2024 (ECF No. 21), six days prior to the June 3, 2024 deadline as prescribed by Section IV.M. of this Court's Individual Practices and Procedures, applicable to "Cases Governed by the Private Securities Litigation Reform Act (PSLRA)" and specifying that "Opposition to each such motion must be filed separately and must be received by the court no later than fourteen (14) business days following the date on which such motions are due."

[3] LIFO is the preferred and most-widely-accepted methodology for calculating movants' losses. *See Bo Young Cha v. Kinross Gold Corp.*, No. 12-cv-1203 (PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (observing that "the overwhelming trend . . . nationwide has been to use LIFO"). The movants' LIFO losses are taken from their respective filings.

Action, not the *Downing* Action, which is the operative class period, as discussed more fully below.

**Second**, Movant Downing satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23, and Huey has not offered any "proof" to the contrary. *See infra*, Section III.B.; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Micholle v. Ophthotech Corp.*, Case No. 17-cv-210 (VSB), 2018 WL 1307285, at *4 (S.D.N.Y. Mar. 13, 2018).

**Third**, Huey has demonstrated her inadequacy as a class representative by resisting consolidation of the above-captioned Related Actions, which should plainly be consolidated pursuant to Fed. R. Civ. P. 42, given the abundance of common questions of law and fact. It speaks volumes that Huey cannot offer a single securities class action in support of her groundless and irresponsible assertion that these Related Actions should proceed independently of each other. *See* ECF No. 21 at 3 n.1.

**Fourth**, Huey has also demonstrated her inadequacy as a class representative by refusing, in contravention of the applicable law, to apply the broader, more inclusive *Downing* Class Period. *See Ragan v. AppHarvest, Inc.*, No. 21-cv-7985 (LJL), 2021 WL 5909116, at *7 (S.D.N.Y. Dec. 13, 2021) ("Where there are two potential class periods, courts addressing lead plaintiff motions generally apply the longer class period."). Huey would have this Court believe that the *Downing* Class Period – which expands the class period alleged in *Blum* from February 1, 2022 through January 1, 2024 (the "*Blum* Class Period") by just over seven months to June 21, 2021 through January 1, 2024 – is "implausible" and "obviously frivolous." *See* ECF No. 21 at 6. Huey's contention is baseless. To the contrary, the *Downing* Class Period seeks to protect a greater number of Anavex investors and recover potentially significantly higher damages for the

putative Class, while still premised on essentially the same facts and theory of liability, and against the same Defendants as alleged in *Blum*.

Importantly, the conduct of Huey's counsel belies Huey's baseless contention that the *Downing* Class Period is somehow frivolous. Following the filing of the *Downing* complaint, Huey's counsel issued a press release advising Anavex investors that **the operative Class Period was now the broader period alleged in Downing**.[4] The press release encouraged investors to "Contact Levi & Korsinsky Before May 13, 2024 to Discuss Your Rights." *See id*. It strains credulity that Huey's counsel would issue a press release regarding the expanded *Downing* Class Period, encouraging prospective lead plaintiff movants to contact counsel – which it had no obligation to do under the PSLRA – only to contend that the *Downing* Class Period is "implausible" and "frivolous." Indeed, despite its rhetoric, as discussed below, when representing other investors in other PSLRA cases, Huey's counsel has filed complaints that extended a class period during the PSLRA's 60-day period. *See* Exs. B-F.

Regardless, it is well-settled that the longest, most inclusive class period governs the analysis of a lead plaintiff's financial interest, both because the most inclusive period encompasses more potential class members and because, at this preliminary stage of the litigation, merits-based determinations, including the appropriate dates encompassing the class period, are premature. For these reasons, the overwhelming majority of courts to consider this issue has adopted the most inclusive class period. This is because only patent frivolousness or implausibility permits otherwise. *See In re Elan Corp. Sec. Litig.*, No. 08-cv-8761 (AKH), 2009

---

[4] A copy of Levi & Korsinsky's press release advising Anavex investors of the class action lawsuit against Anavex with the class period of June 21, 2021 through January 1, 2024 is attached as Exhibit ("Ex.") A to the Supplemental Declaration of Radha Nagamani Raghavan ("Supp. Raghavan Decl."), submitted concurrently herewith. All exhibit references are to the Supp. Raghavan Decl.

WL 1321167, at *1 (S.D.N.Y. May 11, 2009) ("it is appropriate to use that more inclusive period for present purposes" as long as the claims are not "implausible"). Neither applies here.

For the reasons set forth below: (i) the above-captioned Related Actions should be consolidated; (ii) Movant Downing, the "most adequate plaintiff," with losses of $216,243.88 – by far the largest of any movant – should be appointed Lead Plaintiff; and (iii) Downing's selection of Berger Montague PC as Lead Counsel should be approved. The Huey Motion should be rejected.

## ARGUMENT

I. **Consolidation of the Related Actions is Appropriate, and the Failure to Consolidate Will Result in the Needless Waste of Resources**

As set forth in Movant Downing's opening papers, the PSLRA "requires that courts presiding over putative securities class actions resolve questions of consolidation before appointing a lead plaintiff." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015) (McMahon, J.). Rule 42 gives courts broad discretion to determine whether consolidation is appropriate, and provides that a court may consolidate actions that "involve a common question of law or fact." *See* Fed. R. Civ. P. 42(a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.1990). Critically, as Competing Movant seems to ignore, actions need not be identical for consolidation to be appropriate. *See Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 474–75 (S.D.N.Y. 2016) (citation omitted). Likewise, "differences in . . . the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Id.* at 475 (citation omitted).

Huey argues against consolidation, asserting (in a cursory footnote) without explanation that consolidation of the Related Actions would "risk confusion and complicate the progression

of the cases as they move forward." *See* ECF No. 21 at 3, n. 1. Huey's sole authority, *Carlyle Aviation Mgmt. v. Frontier Airlines, Inc.*, No. 23-cv-4774 (PAE), 2024 WL 168079 (S.D.N.Y. Jan. 16, 2024), is inapposite. *Carlyle* is not a securities class action (it concerns a dispute over lease agreements) and does not even involve "the same events or transactions." *See id.* at *14. Indeed, one of the suits at issue focused on whether the defendant was obligated to cooperate under the lease agreements, while the other involved questions of notice. *See id.* There is simply no comparison between that instance and the facts at bar.

Here, the Related Actions, like the vast majority of securities class actions, are perfectly suited for consolidation pursuant to Rule 42. The complaints in both Related Actions allege violations of the Exchange Act against identical defendants, they present the same or similar theories for recovery, and are based on substantially the same allegedly wrongful course of conduct – namely, Defendants' allegedly false and/or misleading statements or omissions regarding the primary and secondary endpoints by which Anavex evaluated its drug blarcamesine as a treatment for Rett syndrome. Both of the Related Actions plead that Defendants' "statements about its research methods and analysis were false and misleading," and that "Defendants misled investors by providing a materially flawed and inaccurate impression of the Company's research program and of blarcamesine's actual likelihood of success in the Rett syndrome trials." *See* ECF No. 1 (*Blum* complaint), ¶ 66; *Downing* ECF No. 1 (*Downing* Complaint), ¶ 61. Inescapably, the Related Actions bring identical causes of action based upon the same allegedly wrongful conduct by the same Defendants during substantially overlapping class periods. *See Omdahl v. Farfetch Ltd.*, No. 19-cv-8657(AJN), 2020 WL 3072291, at *1 (S.D.N.Y. June 10, 2020) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)) ("To be sure, there are differences between the two cases…. However, '[d]ifferences in causes of action, defendants, or the class period do not

render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.'").

Further, contemporaneous with the filing of the *Downing* complaint, Downing filed a Related Case Statement which set forth the factual bases for relatedness. *See* Downing ECF No. 8. The following day, May 10, 2024, the docket reflected that the *Downing* case was "ACCEPTED AS RELATED" to the *Blum* action.

Thus, the Related Actions satisfy Rule 42 and should be consolidated.

## II. The Broader Period of Alleged Fraud Pled in the *Downing* Complaint Should be the Operative Class Period, as it is Neither "Implausible" Nor "Obviously Frivolous"

It is well-settled that, pursuant to the PSLRA, the longest, most inclusive class period governs the lead plaintiff appointment process. *See Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 209 n. 11 (E.D.N.Y. 2019) ("For the purposes of appointing lead plaintiff in cases involving two potential class periods, courts use the longer class period in the analysis."); *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("For the purposes of this analysis, we use the longer class period with the earlier start date."); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) ("Using the longer Class Period" to calculate competing lead plaintiffs' financial interests.). The reasons for this are intuitive: the most inclusive period encompasses more potential class members and increases potential damages that the class stands to recover. *See Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15-cv-2106 (ER), 2015 WL 6029950, at *5 (S.D.N.Y. Oct. 14, 2015) ("The Court will use the longest-noticed Class Period . . . as it encompasses more putative class members."); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402 (S.D.N.Y. 2006). Accordingly, here, the *Downing* Class Period (June 21, 2021

through January 1, 2024, inclusive), not the *Blum* class period (February 1, 2022 through January 1, 2024, inclusive) should govern.

Courts disregard a class period "***only*** where the proposed class period is implausible or obviously frivolous." *Lucas v. United States Oil Fund, LP*, No. 20-cv-4740 (PGG), 2020 WL 5549719, at *4 (S.D.N.Y. Sept. 16, 2020) (citation and quotations omitted) (emphasis added). *See In re Centerline Holding Co. Sec. Litig.*, No. 08-cv-1026(SAS), 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) ("For purposes of determining the lead plaintiff, I hold that the proper standard is that which is used to evaluate a motion to dismiss: the standard of plausibility."); *see also*, *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433–35 (S.D. Tex. 2010) ("For purposes of selecting a lead plaintiff, the Court will use the longest noticed class period unless the factual allegations supporting that period are "'obviously frivolous."'") (citations omitted).

Competing Movant Huey claims that the *Downing* Class Period is "implausible" and "obviously frivolous" (ECF No. 21 at 6), insisting that the class period can begin only on February 1, 2022, because on that date, "defendants told the market it would use AVATAR's evaluation methods in its next study, EXCELLENCE." *See id*. But even the most cursory reference to the *Downing* complaint – which begins the *Downing* Class Period on June 21, 2021, thus expanding the two-year period by roughly seven months – reveals that the conduct alleged therein relates directly to the conduct alleged in *Blum*, and is therefore neither "frivolous" nor "obviously implausible." In fact, as demonstrated below, the *Blum* complaint itself – which ***Huey's own counsel filed*** – demonstrates that the two complaints speak to the same conduct.

The gravamen of the *Blum* complaint is that Anavex represented that it "intended to use several 'Primary Outcome Measures' and 'Secondary Outcome Measures' to evaluate" blarcamesine as a treatment for Rett's syndrome in adults (the AVATAR trial), but that

"[c]ontrary to the protocol described on [FDA-sponsored website] ClinicalTrials, when Anavex later reported its trial results, the Company revealed that *it used alternative measures to assess the drug's success*." ECF No. 1 at 2 (emphasis added). However, as the *Blum* complaint further alleges, "[n]otwithstanding the backlash it received from the market and the substantial market capitalization losses, Anavex would proceed to pull *the same sleight of hand with its 'Excellence'* Phase II/Phase III study, which investigated blarcamesine as treatment for pediatric Rett syndrome patients." *Id.* at 3 (emphasis added). In other words, the *Blum* complaint alleges that Anavex misrepresented its "outcome measures" for the EXCELLENCE study (which tested blarcamesine in children) after having done so for its AVATAR study (which tested blarcamesine in adults). The *Downing* complaint simply broadens the Class Period to include the misrepresentations relating to that earlier AVATAR study. *See Downing* ECF No. 1 at 12-15 (alleging investor losses arising from Defendants' alleged manipulation of the AVATAR study endpoints); *id*. at 17-18 (alleging investor losses arising from Defendants' alleged manipulation of the EXCELLENCE study endpoints). Not only is the *Downing* Class Period not "obviously implausible," it is, in fact, the stronger, more complete Class Period. As such, the *Downing* Action alleges additional actionable misstatements and potentially affords greater recovery to a greater number of Anavex investors.

It deserves mention that February 1, 2022, the first day of the *Blum* Class Period, is more properly pled as a partial corrective disclosure of the truth (which is how it is alleged in *Downing*). According to the *Downing* complaint, the market reacted negatively when Anavex's manipulation of the endpoints for the AVATAR trial was partially revealed on February 1, 2022. Following that news, Anavex shares fell more than 19%. *See Downing* ECF No. 1 ¶54.

February 1, 2022 is, therefore, a less logical date to start a class period relating investor losses in Anavex than June 21, 2021.

The Southern District of New York's decision in *Turner v. ShengdaTech, Inc.*, No. 11-1918 (TPG), 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011), is instructive. There, a new complaint expanding the class period of a securities fraud class action by *nearly two years* was filed on the very same day as the lead plaintiff motion deadline. *See id.*, 2011 WL 6110438, at *2. A lead plaintiff movant argued that the notice of the first-filed action was insufficient because the newly filed complaint "so expands the Class Period of the first-filed case." *Id.* The Court rejected the challenge, declined to order the republication of notice, and applied the more inclusive class period, holding that, because the newly-filed action "proceeds against the same defendants as the first-filed [] action, relies on the same legal theories as that action, and concerns the same type of securities as that action," potential lead plaintiffs "were adequately notified of the nature of the claims . . . despite the shorter purported Class Period of that action." *Id.* at *3. That reasoning applies here.

Moreover, although not required,[5] after filing the *Downing* complaint, Movant Downing published notice of the pendency of his complaint, alerting investors to the fact that the class period for the claims against Anavex had been broadened. *See* Ex. G. Thereafter, several law firms which represent investors in securities class actions – ***including counsel for Huey*** – issued

---

[5] *See* 15 U.S.C. § 78u–4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published."); *see also*, *Turner v. ShengdaTech, Inc.*, No. 11-1918 (TPG), 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011) ("Courts, however, disfavor republication of notice under PSLRA when a class period is extended beyond the period contained in the first-filed securities class action."); *McCormack v. Dingdong (Cayman) Ltd.*, No. 22-CV-7273 (VSB), 2023 WL 3750162, at *3 (S.D.N.Y. June 1, 2023); *Hom v. Vale, S.A.*, No. 15-CV-9539 (GHW), 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016).

press release notices informing Anavex investors of the expanded class period and their rights under the PSLRA. *See* Exs. A, H-J. As discussed above, Huey's counsel published a press release regarding the *Downing* Class Period, indicating that "[t]he lawsuit seeks to recover losses on behalf of Anavex Life Sciences investors who were adversely affected by alleged securities fraud between June 21, 2021 and January 1, 2024." *See* Ex. A.

Huey's challenge to the filing of the *Downing* complaint is further undermined by the fact that, when representing other investors in other securities class actions, Huey's counsel has done precisely what it challenges here. For example, in *In re Humanigen, Inc. Securities Litigation*, No. 22-cv-05258 (D. N.J.), an initial complaint was filed on August 26, 2022 on behalf of investors who purchased Humanigen securities between May 28, 2021 and July 12, 2022, triggering a lead plaintiff deadline of October 25, 2022. *See* Ex. B. Approximately one week prior to that deadline, on October 17, 2022, Huey's counsel, representing a Humanigen investor, filed a related action which extended the class period by more than a year (May 16, 2020 through July 12, 2022). *See* Ex. C. However, Huey's counsel did not issue notice of the pendency of the complaint until October 20, 2022 – five days before the lead plaintiff motion deadline. *See* Ex. D.

More recently, an investor filed an initial complaint against Paycom Software, Inc. ("Paycom") on November 11. 2023, triggering a deadline to file lead plaintiff motions on January 9, 2024. *See* Ex. E. The class period for the initial complaint was May 3, 2023 through November 1, 2023. *See id*. Huey's counsel filed a subsequent securities class action complaint against Paycom four business days prior the expiration of the 60-day lead plaintiff motion deadline. *See* Ex. F. Huey's counsel extended the class period of the initial complaint by more than one year (February 9, 2022 through November 1, 2023). *See id*.

In sum, the *Downing* Class Period is neither "implausible" nor "obviously frivolous," and should therefore govern in the lead plaintiff appointment process here. Huey's cursory attack on the *Downing* Class Period is not well founded and inconsistent with the law and facts, and should be rejected.

## III.   Movant Downing Should Be Appointed Lead Plaintiff

Downing satisfies all criteria set forth under the PSLRA and deserves the presumption that he is the "most adequate plaintiff." Accordingly, as this strong presumption in favor of Movant's appointment has not been rebutted – nor can it – Downing is entitled to appointment as Lead Plaintiff.

### A.   Downing Has the Largest Financial Interest

The PSLRA provides that there is a "rebuttable presumption … that the most adequate plaintiff … is the person or group of persons … that … has the largest financial interest in the relief sought by the class." *See* 15 U.S.C.§ 78u-4(a)(3)(B)(iii)(I); *see also Kemp v. Universal Am. Fin. Corp.*, Case No. 05-CV-9883-JFK, 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006). Downing suffered losses of $216,243.88 during the *Downing* Class Period in connection with his transactions in Anavex securities. By contrast, Huey fails to provide her losses during the *Downing* Class Period. However, counsel for Downing calculates Huey's losses during the *Downing* Class Period as $123,030.15. Therefore, of the two competing movants, Downing has the largest financial interest – more than double that of Huey.

Huey only provides her losses during the original and superseded *Blum* Class Period. However, Huey's loss calculation during the *Blum* Class Period is wrong and less than that submitted to the Court. That is because Huey attached four "Assignments" to her Certification that assigned, "all rights, title, and interest of the Assignor[s] in any and all claims, demands, and causes of action of any kind" to Huey. *See* ECF No. 15-1. In each Assignment, Huey agreed to "remit any

proceeds received as a result of [the] assignment to the Assignor." Such assignments have been held to be "inconsistent with the statutory structure and purpose of the PSLRA to adopt the notion that [a lead plaintiff movant] would have the Court adopt here: that a party can achieve lead plaintiff status not by virtue of his own transactions during the proposed class period but by virtue of assignments of claims by other class members after the class period has ended and after litigation has commenced." *See May v. Barclays PLC*, No. 23-cv-2583 (LJL), 2023 WL 5950689, at *14 (S.D.N.Y. Sept. 13, 2023) (Liman, J.).

Downing indisputably has "the largest financial interest in the relief sought by the [C]lass," and is thus the presumptive "most adequate plaintiff." *Glavan v. Revolution Lighting Techs., Inc.*, No. 19-cv-980 (JPO), 2019 WL 3406582, at *2 (S.D.N.Y. July 29, 2019) (quoting 15 U.S.C. § 78u-4(a)(3)(B)); *see also Atanasio v. Tenaris S.A.*, 331 F.R.D. at 27 (finding lead plaintiff movant with largest approximate loss to have the largest financial interest under the *Olsten* criteria).

### B.    Downing Satisfies the Requirements of Rule 23

In addition to suffering the largest loss, Downing also satisfies the PSLRA's preliminary showing of typicality and adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-cv-3608 (VSB), 2019 WL 364570, at *4 (S.D.N.Y. Jan. 30, 2019) ("A potential lead plaintiff must also make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (quotation and internal citations omitted). As Huey has not, or will not be able to, submit the required "proof" that Downing fails on typicality or adequacy grounds, Downing is entitled to appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (evidentiary burden required to rebut presumption of most adequate plaintiff is "proof"); *see also Macquarie Infrastructure Corp.*, 2019 WL 364570, at *7 (rejecting speculative arguments against presumptive lead plaintiff).

### 1.    Downing Is Typical

Downing is typical of the Class as a whole and not subject to any unique defenses which would disqualify him. "With respect to typicality, courts consider whether the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'" *Plaut v. The Goldman Sachs Grp., Inc.*, No. 18-cv-12084 (VSB), 2019 WL 4512774, at *3 (S.D.N.Y. Sept. 19, 2019) (quoting *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). Importantly, Rule 23 does not require the lead plaintiff to be identically situated with all class members to satisfy the typicality requirement. *See Plaut v. The Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *3 (noting that "claims need not be identical"); *see also Faig v. Bioscrip, Inc.*, No. 13-cv-06922 (AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013) (same).

Here, Downing's claims are typical to the class as a whole. Downing: (i) suffered losses on his investment in Anavex securities; (ii) as a result of his reliance on Defendants' alleged misstatements and/or omissions; (iii) therefore, the claims of Downing are based on the same course of events as the claims of the Class; and (iv) as a result thereof, Downing's claims will rely upon the same legal theories as the Class as a whole. Therefore, Downing satisfies the typicality requirement. *See Faig v. Bioscrip, Inc.*, Case No. 13-cv06922-AJN, 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013).

### 2.    Downing Is Adequate

Downing also satisfies Rule 23's adequacy requirement. In analyzing a movant's adequacy, "a court must consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *Salinger v.*

*Sarepta Therapeutics, Inc.*, No. 19-cv-8122 (VSB), 2019 WL 6873807, at \*3 (S.D.N.Y. Dec. 17, 2019) (citation omitted).

Downing readily satisfies the adequacy requirement. Downing is committed to pursuing the best recovery possible for himself and all other Class members. He incurred substantial losses in his Anavex investment during the Class Period and thus is highly motivated to maximize any recovery.

Finally, Downing further demonstrated his adequacy through his selection of the law firm of Berger Montague, as proposed Lead Counsel for the Class. *See Moshell v. Sasol Limited*, No. 20-cv-1008 (JR), 2020 WL 2115410, at \*2 (S.D.N.Y. Feb. 5, 2020) (finding adequacy requirement satisfied where movant selected "firm experienced in securities class action litigation").

Based on the foregoing, Downing, as the movant with the largest financial interest who also satisfies the typicality and adequacy requirements of Rule 23, is entitled to appointment as Lead Plaintiff.

## IV.    Movant Downing's Selection of Counsel Should Be Approved

Subject to Court's approval, the PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the Lead Plaintiff's selection only when necessary "to protect the interests of the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Downing selected the law firm of Berger Montague to serve as Lead Counsel for the class. As discussed in the memorandum of law submitted in support of Movants' Motion (ECF No. 18 at 12), Berger Montague is highly experienced in securities litigation and the full range of class actions, and has successfully prosecuted numerous cases – including through trial – on behalf of investors. *See id.*

Accordingly, this Court can confidently approve Downing's selection of Lead Counsel.

## <u>CONCLUSION</u>

In sum, for all of the foregoing reasons, and for the reasons set forth in Movant Downing's opening papers, Movant Downing's Motion should be granted, Competing Movant Huey's motion should be denied in its entirety, and: (i) the Related Actions should be consolidated; (ii) Movant Downing should be appointed Lead Plaintiff; and (iii) Movant Downing's selection of Berger Montague PC as Lead Counsel should be approved.

Dated: June 3, 2024

Respectfully submitted,

**BERGER MONTAGUE PC**

/s/ *Radha Nagamani Raghavan*
Radha Nagamani Raghavan
Michael Dell'Angelo
Andrew D. Abramowitz
James A. Maro
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: rraghavan@bm.net
      mdellangelo@bm.net
      aabramowitz@bm.net
      jmaro@bm.net

*Counsel for Lead Plaintiff Movant Kenneth*
*Downing and Proposed Lead Counsel for the Class*

**SCHALL LAW FIRM**
Brian Schall
Rina Restaino
Brian England
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel: (310) 301-3335
Email: brian@schallfirm.com
      rina@schallfirm.com
      briane@schallfirm.com

*Additional Counsel for Lead Plaintiff Movant*
*Kenneth Downing*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Radha Nagamani Raghavan*
Radha Nagamani Raghavan
